**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 04-30025-01** |
| **VERSUS** | * | **JUDGE JAMES** |
| **HOWARD CALVIN HARRIS, JR.** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence filed by defendant Howard Calvin Harris, Jr., initially *pro se*, but presently represented by counsel. [Docs. #145, #150]. The Government opposes Harris's motion. [Doc. #149]. For reasons stated below, it is recommended that the motion be **DENIED**.

## BACKGROUND

On May 27, 2004, an indictment issued against Harris, as well as co-defendants Christopher Turner and Kimberly Lang, charging him with conspiring to possess with intent to distribute five or more kilograms of cocaine (Count One), conspiring to possess with intent to distribute marijuana (Count Two), possessing with intent to distribute five or more kilograms of cocaine (Count Three), possessing with intent to distribute marijuana (Count Four), and possessing and carrying a firearm during and in relation to drug trafficking crimes (Count Five).

Harris was arrested in April 2004. On the night of his arrest, Harris gave two statements to law enforcement. [Doc. #163, p.40]. Subsequently, Harris filed a motion to suppress all evidence obtained from what he asserted was an illegal stop and detention. [Doc. #73]. The motion to suppress was denied. [Doc. #98].

In December 2004, in anticipation of a possible plea bargain, Harris made a proffer statement to law enforcement officers. The parties did not reach an agreement and Harris went to trial. At trial, Harris was represented by Louis Scott. Harris took the stand at trial and repudiated his December 2004 proffer statement. [Doc. #126, p.9]. Harris claimed that law enforcement had coached the entire conversation and that none of the statements were true. *Id.*

The jury found Harris guilty of Counts One, Two, and Three and not guilty of Counts Four and Five. After the trial, Harris sought application of the Safety Valve provision which would have provided for a two-level departure from the Guidelines range. *See generally* U.S.S.G. § 5C1.2. The Government opposed the application of the provision, arguing that Harris had not truthfully provided all known information regarding the offenses. The court declined to apply the Safety Valve reduction and sentenced Harris to terms of imprisonment of 133 months and 60 months to run concurrently. [Doc. #129]. Harris did not testify at the sentencing hearing.

Immediately after sentencing, Scott withdrew as counsel and new counsel was appointed to assist Harris with his appeal. The Fifth Circuit affirmed the convictions on appeal. [Doc. #144]. Harris filed the instant motion on December 17, 2007. Harris amended the motion on February 7, 2008. This court held an evidentiary hearing on July 15, 2008. Scott was the only witness called at the hearing.

## LAW AND ANALYSIS

### I.    The Law of § 2255 Actions

Only cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106,

1109 (5th Cir. 1998). Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). Thus, even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant "may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc). "[T]he Supreme Court has recognized a narrow exception to the cause and prejudice test . . . this exception . . . is limited to 'extraordinary' cases involving 'manifest miscarriage[s] of justice' that would result in the continued incarceration of one actually innocent of the offense." *Id.*

"[T]he general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987). Consequently, "the procedural bar does not apply to ineffective assistance of counsel" claims. *United States v. Willis*, 273 F.3d 592, 598 n.7 (5th Cir. 2001); *see also United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992) ("Ineffective assistance of counsel . . . [may constitute] cause for a procedural default" (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986))).

## II. Ineffective Assistance Of Counsel

Ineffective assistance of counsel claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, Harris must show both that (1) his attorney's performance was deficient; and (2) the "the deficient performance prejudiced the defense." *Id.* If the defendant does not make a sufficient showing as to one section of the

test, the other prong need not be considered. *See Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).

The defendant has the burden of showing that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. An attorney's performance is measured against an "objective standard of reasonableness," *id.* at 688, "under prevailing professional norms." *Id.* In applying the first part of the *Strickland* test, courts should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See id.* at 689-90.

To satisfy the prejudice prong, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Accordingly, "[c]ounsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir.1990).

### A.  Scott's Advice That Harris Should Not Testify At His Sentencing Hearing Did Not Constitute Ineffective Assistance Of Counsel

Harris contends that he was deprived of the effective assistance of counsel because Scott did not advise him to testify at the sentencing hearing. [Doc. #145-1, p.14-15]. Harris contends that his testimony "would have cleared up any doubt [regarding] the Safety Valve provision." *Id.*; *see generally* U.S.S.G. § 5C1.2. The Safety Valve provision allows for a two level departure

if, *inter alia,*

> the **defendant has truthfully provided to the Government all information and evidence the defendant has** concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

*Id.* (emphasis added). This claim was the subject of the evidentiary hearing held in July 2008.

As noted above, Harris provided several accounts of his involvement in the offenses. He made two post-arrest statements and a proffer to law enforcement before trial, and then testified at trial. Ultimately, the inconsistencies in these versions caused the court to rule against Harris. The court noted that Harris had claimed at trial that the law enforcement agent had "coached their entire conversation and that none of the statements were true." [Doc. #126, p.9]. Based on that finding, the court held that Harris "did not truthfully provide the Government all information he has." Now, Harris claims that had he testified at the sentencing hearing and provided all known information, he would have received the two level reduction. *See* U.S.S.G. § 5C1.2 (requiring that the defendant provide the information "not later than the time of the sentencing hearing.").

The law generally requires an attorney to advise "the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide . . . Moreover, if counsel believes that it would be unwise for the defendant to testify, counsel . . . should advise the client . . . not to testify." *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992) (en banc), *cited by Smithy v. Quarterman*, 222 Fed. Appx. 406, 412 (5th Cir. 2007) (unpublished), *cert denied* 128 S. Ct. 1221.[1] "[S]trategic choices made after

---

[1] The Fifth Circuit has distinguished as separate violations the denial of effective assistance of counsel and the denial of the defendant's right to testify on his own behalf. *See Jordan v. Hargett,*

thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Consequently, "a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy." *Massaro v. United States*, 538 U.S. 500, 505 (2003).

Here, Scott made a strategic decision when he advised Harris against testifying at the sentencing hearing. As Scott testified at the evidentiary hearing, he considered presenting Harris's testimony at the sentencing hearing, but decided against it. [Doc. #163, p.29]. Scott testified that "even now" he remains unconvinced that Harris would have been better suited by testifying at the sentencing hearing. Even if this court, looking back, concludes that Scott made the wrong decision, it cannot grant Harris's motion absent a finding that the strategy was unreasonable. *See also Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.")[2] Harris has failed to demonstrate that Scott's strategy was unreasonable; Scott testified at the

---

34 F.3d 310, 316 n.5 (5th Cir. 1994) (holding that denial of a defendant's right to testify should not be examined under *Strickland*); *see also United States v. Mullins*, 315 F.3d 449, 452-53 (5th Cir. 2002) ("We distinguish between interference with that right by defense counsel, and interference by the court or prosecutor . . . where the defendant contends that his counsel interfered with his right to testify, the 'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.' "). In this case, Harris does not argue a violation of his right to testify; he argues only that his attorney performed deficiently by failing to advise him to testify. [Docs. #145-1, p.14]; *see also United States v. Williams*, 133 F. Supp. 2d 902, 907 (S.D.Miss. 1998) ("There is no violation of the right to testify if a defendant acquiesced during trial to his attorney's recommendation that he not testify and later decided that he should have testified.").

[2] "To recall the words of Justice (and former Solicitor General) Jackson: 'I made three arguments of every case. First came the one that I planned--as I thought, logical, coherent, complete. Second was the one actually presented--interrupted, incoherent, disjointed, disappointing. The third was the utterly devastating argument that I thought of after going to bed that night.' " *Yarborough*, 540 U.S. at 8.

evidentiary hearing and articulated several bases for advising Harris not to testify.

Critically, Scott believed that he had a meritorious argument likely to prevail even without Harris's testimony. Scott planned to argue that Harris had already provided all of the information and evidence he had concerning the offenses and that the various accounts had simply been amplifications of the others. [Doc. #163, p.36-37]. Harris's current counsel conceded the merits of this argument at the evidentiary hearing. *Id.* at 37. After Scott opined that – based on this argument – "the Judge made the wrong decision," counsel responded, "I understand. We agree with you." Moreover, as Scott discussed, there were risks to calling Harris to testify.

One risk was that Harris would further "muddy the waters" by creating additional inconsistencies among his versions of the events. *Id.* at 29. In addition, Scott acknowledged that by testifying at the sentencing hearing, Harris risked causing an increase in his sentence, by admitting to facts not proven at trial. *Id.* at 29-30; *see generally United States v. Booker*, 543 U.S. 220, 245 (2005) (The Sixth Amendment "is violated by the imposition of an enhanced sentence under the [Guidelines] based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant."). Finally, Scott indicated his belief that Harris would have risked a perjury charge had he testified at the sentencing hearing because Harris would have had to repudiate the testimony he had given under oath at trial (which, in turn, had been a repudiation of his December 2004 proffer). [Doc. #163, p.49]. Based on the foregoing considerations, the undersigned finds that Harris has failed to "show that counsel's actions were not supported by a reasonable strategy" with regard to advising Harris not to testify at the sentencing hearing. Each of the justifications constituted a sound basis

for the strategic decision – especially from Scott's perspective before the hearing, i.e., without the benefit of making the decision in hindsight. As a result, Harris cannot establish that Scott performed deficiently in this regard and, as such, his ineffective assistance of counsel claim fails.[3]

Harris argues in his post-evidentiary hearing brief that Scott performed deficiently at trial by eliciting testimony from Harris that was inconsistent with previous statements made by Harris [during his post-arrest interviews and his proffer] on the issue of Harris's knowledge of and involvement in the drug organization headed by Lang and her brother and his knowledge of the cocaine seized from his vehicle in April 2004. According to Harris, in doing so Scott severely limited his ability to obtain the benefit of the Safety Valve provision. Harris argues that the only reason he did not plead guilty was that he did not want to plead guilty to the gun charge, and that Scott acknowledged that the Government's case with regard to the cocaine counts (conspiracy and possession) was strong. Also, Scott testified that his strategy with regard to such counts was to require the Government to prove its case beyond a reasonable doubt.

Harris argues that Scott performed deficiently in failing to consider conceding the cocaine counts at trial and defending only on the gun and marijuana counts because Harris had not made statements to the Government inconsistent with his position at trial that he was not guilty of those counts. He argues that Scott specifically questioned him at trial about his lack of

---

[3] Harris would be hard pressed to establish prejudice even if the court found Scott performed deficiently by advising Harris against testifying. *See United States v. Ridgeway*, 321 F.3d 512, 516 (5th Cir. 2003) ("Sentencing courts have been reluctant to provide § 5C1.2 relief to defendants with questionable credibility."), *abrogated on other grounds*.

knowledge of the cocaine and drug conspiracy and his involvement in it,[4] as well as his post-arrest statements to the case agent, Agent Zordan, in such a way that his trial testimony was at odds with such statements[5] and his proffer. According to Harris, if Scott had presented a defense consistent with his claimed trial strategy of only fighting the gun and marijuana charges, there is a reasonable probability that Harris would have received the benefit of the Safety Valve

---

[4] Scott asked Harris, *inter alia*, whether he had ever made any deliveries of drugs for either Lang or Dorrough and whether he knew how the cocaine got into his vehicle. Harris responded in the negative to both questions. [Trial Tr., p. 319, 327].

[5] With regard to Harris's post-arrest statements to Agent Zordan, Scott questioned him regarding where the questioning took place, how long it lasted, who else was there during the questioning, and whether it was recorded. He then questioned Harris specifically with regard his answers to Agent Zordan's questions as follows:

Q: Now, where did you tell Agent Zordan that you were going?

A: To Isle of Capri in Vicksburg.

Q: And at some point, did he – did you tell him that you were going somewhere else?

A: Well, the conversation started similar to this: He said, "Let's talk hypothetically. You were going to Jackson. It's three hours from now. You got stopped at 3:00. Were you supposed to be there at 6 o'clock?" And he just coached the whole conversation.

Q: So he was talking hypothetically?

A: Yeah, he was.

* * * *

Q: When Agent Zordan was – questioned you, did you tell him that you were going to get $500 or $600 for the trip, or do you remember one way or the other, or was it during the hypothet (*sic*)?

A: He named the price. I just say yes.

[Trial Tr., p. 330-332].

provision. *See Crane v. Johnson*, 178 F.3d 309, 312-13 (5th Cir. 1999) ("[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'").

The fact that Scott acknowledged that the Government's case on the cocaine counts was strong and that his initial trial strategy was to require the Government to prove its case beyond a reasonable doubt does not indicate that his ultimate decision to question Harris regarding such counts rendered his performance constitutionally deficient.[6] Scott testified that in considering whether to call Harris to testify at trial, he "weighed all the factors," including the impact it would have on Harris' eligibility for the Safety Valve reduction.[7] Moreover, and more importantly, Harris has not demonstrated that Scott knew or should have known prior to putting Harris on the stand at trial that Harris's testimony would be so contradictory to the information provided in his post-arrest interviews or proffer that it would threaten his eligibility for the Safety Valve provision.[8] That Harris's trial testimony turned out to be inconsistent with his previous statements, and that such inconsistency was a factor in the district court's decision that Harris

---

[6] Scott testified that he called Harris to testify because it was his opinion that it would not be possible to defend the gun charge without his testimony. He stated that there was very little discussion in Harris's proffer statement regarding the gun; therefore, there was not much risk associated with Harris testifying with regard to that issue.

[7] In addition, Scott testified that because Harris did not have a serious criminal record, he thought that his testifying might have benefitted him with regard to the drug charges. [Doc. #163, p. 50].

[8] In fact, Scott testified that after his discussions with Harris and his participation in the proffer, he had no reason to believe that the information Harris provided in the proffer was not the truth. [Doc. # 163, p. 18]. Indeed, the fact that Scott determined that Harris should testify at trial, but not at the sentencing hearing, strongly suggests that Scott did not anticipate that Harris's testimony would be inconsistent at trial, but recognized the problem Harris had created for himself at sentencing.

was not entitled to the benefits of the Safety Valve provision, does not indicate that Scott performed deficiently; as the Fifth Circuit has noted, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. 668)). Based on the foregoing considerations, the undersigned finds that Harris has failed to demonstrate that Scott's performance was deficient in this regard.

However, even assuming that Scott's performance was deficient, Harris has not demonstrated that he was prejudiced by such deficiency given that, in finding that Harris was not entitled to the benefits of the Safety Valve provision, the district judge relied just as much on the finding that Harris had given three different versions of events to Agent Zordan in his two post-arrest interviews and his proffer as he did on the fact that Harris repudiated his post-arrest statements at trial.[9] The Court noted that Agent Zordan testified that when Harris was first interviewed after his arrest, he stated that the drugs had been provided by Mexicans and that he gave the impression that he did not play a significant role; however, in a subsequent post-arrest interview later that same night, Harris told Agent Zordan that he had dealt with the individuals

_____

[9] The Court stated:

> In this case, Defendant gave agents three different versions of events. Then at trial, according to the Court's own recollection and its review of the trial transcript, Defendant claimed that Zordan coached their entire conversation and that none of the statements were true. Under these circumstances, the Court finds that Defendant did not truthfully provide the Government all information he has, and he is not entitled to application of the safety valve provision.

[Doc. #126].

who provided the drugs three or four times previously.  Then, according to Agent Zordan, Harris provided a different version of events in his proffer.  Therefore, even if Harris had testified only regarding the gun and marijuana charges, and had not contradicted his proffer and repudiated his post-arrest statements, the undersigned cannot conclude that there is a reasonable probability, sufficient to undermine the outcome of the sentencing, that the Safety Valve provision would have been applied to Harris.  [Doc. 126].  *See United States v. Castaneda-Silva*, 258 Fed.Appx. 691, *1 (5th Cir. 2007) (inconsistent statements made to Government sufficient to deny Safety Valve reduction); *United States v. Guzman-Reyes*, 134 Fed.Appx. 758, *1 (5th Cir. 2005) (inconsistent statements given to federal agents over the course of numerous interviews sufficient to support denial of Safety Valve reduction).

Harris also argues that Scott should have introduced Harris's and co-defendant Turner's respective proffers into evidence in order to correct Agent Zordan's testimony at sentencing that the two proffers were inconsistent and to show that Harris truthfully provided all of the information of which he had knowledge. [See Def. Ex. 2,3].[10]  He argues that the information in his proffer and the information in Turner's proffer were consistent and would have revealed that

_____

[10] Scott testified as follows about to his strategy regarding the Safety Valve issue:

> Well, basically, and I'm going from memory, but we wanted to show that he testified at trial.  Evidently the jury believed a large part of – or believed what he had to say.  And what the jury had found was consistent with what he had said, and that what he had said was also consistent with at least one of the statements of Mr. Turner.  And what he had had to say was at least as truthful or more truthful than what the people had said who had been granted greater leniency.

[Doc. #163. p. 27].  Scott stated that he had no reason to believe even up until the time of sentencing that the information in Harris's proffer was not truthful.  *Id.* at 28.

Harris's proffer was truthful.[11]  This argument is without merit.  First, Scott argued extensively at the sentencing hearing that Harris's post-arrest statements and his proffer were not inconsistent; rather, each was an "amplification" of the prior statement(s) rather than a contradiction.  He further argued that although Agent Zordan characterized Harris's statements as contradictory, he was unable to point out contradictions in the statements.[12]  Therefore, although Scott did not admit the proffers or question Agent Zordan in detail about the purported consistencies, the undersigned does not find Scott's performance in this regard to be so deficient that it fell below an objective standard of reasonableness.

In addition, even assuming Scott's performance in this regard was deficient, he has not demonstrated that the outcome of his sentencing would have been different.  Again, in declining to apply the Safety Valve provisions to Harris, the district judge also relied substantially on Agent Zordan's testimony that Harris had given three different versions of events in his two post-arrest interviews and his proffer, respectively.  Even given the consistencies between the two

---

[11] The district court did note in its ruling overruling Harris's objection to the pre-sentence investigation report's not applying the Safety Valve provision to him that Agent Zordan testified that the three versions of events provided by Harris were different from the information provided by co-defendants Turner and Lang.  [Doc. #126].  However, in making its ruling, the Court stated only that Harris gave three different versions of events and that he repudiated his statements at trial.

[12] Scott testified that the reason he did not introduce an additional proffer from Harris at sentencing stating that Harris formally adopted his previous proffer as the truth with regard to his involvement in the offense was that he feeling was that "the more statements you give, . . . the greater questions that can be opened, . . . and then that would have been something else by which the Court could have . . . found that it may not be truthful." [Doc. #163, p. 34-35].  He further stated that he believed that what Harris had stated in his proffer was consistent in terms of the evidence that had been produced; therefore, he felt that the best strategy was to rely on the information that had already been presented rather than create additional statements. *Id.* at 35.  Also, Scott acknowledged that if Harris had formally adopted his previous proffer, he would possibly have had to admit that he lied while testifying at his trial.  *Id.* at 49.

proffers, there is simply not a sufficient probability that such consistency would have caused the

District Judge to disregard Agent Zordan's testimony that Harris had provided three different

versions of events in his post-arrest statements and proffer and, therefore, to give Harris the

benefit of the Safety Valve provision. *See United States v. Gonzalez-Compean*, 179 Fed.Appx.

904, 905-06 (5th Cir. 2006) (rejecting defendant's claim that although he subsequently made

inconsistent statements, he initially made a complete disclosure at the time of his arrest and

therefore the district judge should have given him the benefit of the Safety Valve provision; court

noted that defendant's inconsistent statements called into question his truthfulness).

Moreover, even if Turner's proffer was consistent with Harris's, Turner testified at

Harris's trial and his testimony contradicted his proffer in many respects regarding Harris's role

in the events at issue.[13]  Therefore, the undersigned cannot conclude that any purported

consistency between Harris's and Turner's respective proffers would have been persuasive on the

issue of whether Harris had truthfully provided all of the information of which he had

knowledge.  Accordingly, Harris's ineffective assistance counsel claim in this regard fails.

### B.     Harris's Allegation That He Did Not See His Presentence Investigation

---

[13] For example, in his proffer, Turner stated that (1) he had made two prior trips with Lang and Harris to Jackson, Mississippi, to deliver marijuana; (2) Harris and Lang made weekly trips to deliver marijuana; (3) Oliver Dorrough, Lang's brother, told him, Harris, and Lang that if they ever got arrested not to say anything and that he would get them out of prison; and (4) he wrote a letter from prison taking responsibility for all of the narcotics involved in the case because he met with Harris and Lang in a holding cell and Lang told him that she and Dorrough would pay him $20,000 to take the blame. [Def. Ex. 3].  However, at trial, Turner testified that Harris never worked for Dorrough and never made any runs for Dorrough's business.  [Trial Tr. p. 304].  He also confirmed his earlier statement that he wrote the letter taking responsibility for all of the narcotics because Lang said she would pay him $20,000.  Moreover, during cross-examination, Turner repudiated many of the statements he made during his post-arrest interview which, along with the information provided in his proffer, were noted in Harris's pre-sentence investigation report, regarding Harris's knowledge of the marijuana in Turner's vehicle on the night he was arrested.

**Report Before He Was Sentenced Does Not Require That He Be Resentenced**

Harris contends that he should be resentenced because he was not provided with a copy of his Presentence Investigation Report ("PIR") before the sentencing hearing. Harris offers two bases for this contention. First, Harris contends that Scott's failure to provide a copy of the PIR to him constituted ineffective assistance of counsel. Second, Harris contends that the failure constituted a violation of Rule 32. *See, e.g.*, FED. R. CRIM. P. 32(e)(2) ("The probation officer must give the presentence report to the defendant . . . at least 35 days before sentencing unless the defendant waives this minimum period.").

Harris must establish prejudice regardless of whether he seeks relief under the Sixth Amendment, *Strickland*, 466 U.S. at 687, or Rule 32. This is true because Rule 32 errors are not treated as structural defects and therefore do not require automatic reversal. *United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001). Instead, a Rule 32 error warrants resentencing only if the defendant was prejudiced. *See id.* (explaining that without established prejudice, a district court would be undergoing "an exercise in futility in order to obtain the same sentence"); *accord Morris v. United States*, No.: 2:02-CR-74-P, 2006 U.S. Dist. LEXIS 35699, at *27 (N.D.Miss. Feb. 6, 2006) (holding on 2255 review that "[a] court may remand for resentencing only if a defendant suffered prejudice as a result of the Rule 32 violation."). "To establish prejudice, defendant must show that: (1) the revised pre-sentence report contained factual inaccuracies; and (2) he could have successfully objected to the report, and thereby received a shorter sentence, if he had been furnished with a copy of the report as required by Rule 32." *Morris*, 2006 U.S. Dist. LEXIS 35699, at *27 (citing *United States v. Archer*, 70 F.3d 1149, 1151 (10th Cir. 1995); *Esparza-Gonzalez*, 268 F.3d at 274).

Attempting to establish prejudice, Harris argues that he "should have received the low end of the sentencing guide, mitigating role (3B1.2), and the safety valve departures." [Doc. #145-1, p.11]. The "departures" Harris believes he would have received, however, were expressly considered and rejected by the court. Thus, Harris does not allege that he would have discovered heretofore unconsidered arguments. Regarding the "mitigating role" reduction, the court indicated that "the evidence indicates that Defendant held more than a minimal or minor role. Therefore, to the extent that he contends that he should receive a reduction on the basis of his role in the offense, his Objection . . . is DENIED."[14] [Doc. #126]. Regarding the Safety Valve provision, discussed above, Scott offered extensive argument on the subject and the court nonetheless declined to apply the reduction. Finally, Scott offered several arguments in an attempt to obtain a lesser sentence for Harris. *See* [Doc. #119].

Harris cannot establish how his review of the PIR would have affected his sentence. Harris points to no argument on his behalf that could have been but was not made. Harris's failure to offer even a scant explanation of how his review of the PIR would have led to a lesser sentence, necessarily leads to the conclusion that he suffered no prejudice. This conclusion seems especially reasonable since Scott explained the contents of the PIR to Harris before the

---

[14] To the extent Harris challenges as ineffective counsel's performance in failing to argue that he should have received a four-level reduction in his base offense level due to his minimal role in the offense, this statement by the District Judge indicates that although Scott may not have explicitly made the argument, the Court considered the issue and denied the objection. Therefore, Harris has not demonstrated prejudice in this regard. Moreover, although Harris argues extensively why he believes that he should have been given a reduction based on his purported minimal role, the undersigned does not find that Harris has demonstrated that any of these arguments, many of which are unsubstantiated, were so persuasive on the issue of the reduction that his counsel was ineffective in failing to raise them or that, even if counsel had raised the arguments, the outcome of the sentencing would have been different.

sentencing hearing.  [Doc. #145-1, p.10].

**C.  Harris Was Not Denied The Effective Assistance Of Counsel Due To Scott's Failure To Object To The Scoring Of His Criminal History**

Harris contends that Scott should have objected to the use of Harris's prior petty theft conviction for the purposes of calculating his Guidelines sentence.  [Doc. #150].  This contention is without merit.  As noted, to succeed on an ineffective assistance of counsel claim, Harris must establish prejudice.  *Strickland*, 466 U.S. at 687.  Here, the use of Harris's prior conviction had no demonstrable effect on his sentence.  Harris was sentenced based on a Criminal History Score of "I."  Had the court been convinced that the petty theft conviction should not have been considered, Harris's Criminal History Score would have been "0."  For the purposes of calculating sentences under the United States Sentencing Guidelines, however, Criminal History Scores of "0" and "I" are treated identically.  *See* U.S.S.G. Sentencing Table.  Consequently, Harris was not prejudiced by Scott's failure to make this argument.

**D.  Harris's Trial Counsel Was Not Constitutionally Ineffective**

Harris contends that Scott was constitutionally ineffective because he spent an inadequate amount of time and attention on the case.[15]  Specifically, Harris contends that his attorney

> threatened to enter a Motion to Withdraw as Attorney on three different occasions. [Harris] didn't know for months if he was represented by counsel . . . counsel lost interest.  Counsel showed up late or had to be called on several occasions.  Counsel didn't show up during  the debriefing with the DEA agents . . . He didn't visit [Harris] after the Judge had ordered a reset of the sentencing . . . Movant counsel lost interest in the case . . . . counsel would not give [Harris] a copy of his case file.[16]

---

[15] He states that co-defendant Lang was paying for his attorney and that once payments were stopped his attorney lost interest in the case.

[16] Harris states that he received his case file in May 2007, which left him only six months to research, study, and file his 2255 motion.

17

[Doc. #145-1, p.14].

Harris alleges no specific detrimental effect caused by his lawyer's inattentiveness. "[B]revity of consultation time between a defendant and his counsel, without more, cannot support a claim of ineffective assistance of counsel." *Mattheson v. King*, 751 F.2d 1432, 1439 (5th Cir. 1985)**.** "[T]he appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such. If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance." *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984). Harris's failure to allege prejudice is fatal to this claim.[17]

### D. Harris's Appellate Counsel Was Not Constitutionally Ineffective

Harris raises three arguments for why his appellate counsel was constitutionally ineffective. The first two relate to the issues decided in Harris's pretrial motion to suppress. *See* [Doc. #73]. Harris contends that his appellate counsel was ineffective for failing to appeal the denial of that motion. *See* [Doc. #91]. In addition, Harris argues that his appellate counsel should have argued that reversal of his conviction of County Two was necessary in light of the purportedly inconsistent verdicts reached by the jury with regard to Counts Two (conviction) and Four (acquittal).

"A criminal defendant has a constitutional right to receive effective assistance of counsel on direct appeal." *United States v. Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004). "[T]he Strickland standard applies to claims of ineffective assistance of counsel on appeal and requires

---

[17] The undersigned notes that at the evidentiary hearing held in this matter Harris's attorney testified that he was present for at least part of the December 2004 proffer.

proof showing both a failure of counsel to perform according to reasonable professional standards and prejudice." *Wicker v. McCotter*, 783 F.2d 487, 497 (5th Cir. 1986). "This reasonableness standard requires counsel 'to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention.' " *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *United States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999)). "A petitioner suffers prejudice if, but for the deficient performance, the outcome of the trial – or, in this case, the appeal – would have been different." *Amador v. Quarterman*, 458 F.3d 397, 411 (5th Cir. 2006). "[T]he prejudice prong first requires a showing that we would have afforded relief on appeal . . . this requires [courts] to 'counter-factually determine the probable outcome on appeal had counsel raised the argument.' " *Phillips*, 210 F.3d at 350.

### 1. Illegal Stop/Detention Arguments

Harris argues that his appellate counsel should have reraised the issues of the legality of his traffic stop and detention prior to arrest. These issues were raised in Harris's motion to suppress. [Doc. #73]. The court held a hearing on the motion and the undersigned issued a report and recommendation, recommending that the court deny Harris's motion to suppress. [Doc. #91]. The recommendation was based on several findings. The undersigned found that the arresting officer was justified in conducting the traffic stop because he had observed a traffic ordinance violation. *Id.* at 4 (citing *United States v. Zucco*, 71 F.3d 188 (5th Cir. 1995). In addition, the undersigned found that the officer had a reasonable, articulable suspicion justifying detention and that the suspicion was not dispelled prior to arrest. *Id.* Accordingly, the

undersigned concluded that the detention did not violate Harris's constitutional rights. *Id.* (citing *Terry v. Ohio*, 329 U.S. 1 (1986)). The court agreed with the recommendation and ordered that the motion to suppress be denied. [Doc. #97].

Although Harris devotes extensive argument to why his stop and detention was illegal, the undersigned finds that he points to no argument that could have been made on appeal that would have created even a reasonable probability of reversal on these issues. As a result, Harris was not prejudiced when his appellate counsel chose not to re-raise issues that were fully litigated before Harris's trial.

### 2. Inconsistent Verdicts Argument

Harris argues that his appellate counsel was constitutionally ineffective because he did not argue the inconsistency of the jury verdicts with regard to Counts Two and Four. This argument is without merit. First, the verdicts are not inconsistent. Count Two charged Harris, Turner, Lang, and other known and unknown persons with conspiracy to possess with the intent to distribute marijuana while Count Four was a substantive count that charged Harris, Turner, and Lang with knowingly and intentionally possessing with the intent to distribute marijuana. The law is well that "the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Pinkerton v. United States*, 328 U.S. 640, 643 (1946); *United States v. Threadgill*, 172 F.3d 357, 367 (5th Cir. 1999). "The "essence of the crime of conspiracy is the agreement rather than the commission of the objective substantive crime.'" *United States v. Nims*, 524 F.2d 123, 126 (5th Cir. 1975); *see also United States v. Elashi*, 440 F.Supp.2d 536, 561 (N.D.Tex. 2006) (finding that jury verdicts convicting defendant of conspiracy to commit money laundering but acquitting him of substantive count of money laundering were not

inconsistent).  The prosecution is not required to prove the elements of the substantive offense of possession with the intent to distribute marijuana in order to prove a case of conspiracy to possess with the intent to distribute marijuana.  *See Elashi*, 440 F.Supp.2d at 561; *United States v. Posada-Rios*, 158 F.3d 832, 860 (5th Cir. 1998).[18]  Therefore, as the verdicts were not inconsistent, Harris's appellate counsel was under no obligation to object on appeal on this basis.

Even assuming, however, that the verdicts were inconsistent, Harris still would not prevail.  The Fifth Circuit has held  that "[a] jury can render inconsistent verdicts, 'even where the inconsistency is the result of mistake or compromise.'"  *United States v.* Scurlock, 52 F.3d 531, 537 (5th Cir. 1995); *United States v. Williams*, 998 F.2d 258, 262 (5th Cir. 1993); *United States v. Pena*, 949 F.2d 751, 755 (5th Cir. 1991) ("[E]ven if the counts were overlapping, the law does not require consistency of verdict between the separate counts; [i]nconsistent verdicts may simply be a reflection of the jury's leniency.").[19]  Thus, Harris has demonstrated neither that

---

[18]  "To prove a drug conspiracy in violation of 21 U.S.C. §§ 841 and 846 the government must establish: '(1) the existence of an agreement between two or more persons [to violate the narcotics laws]; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy.'"  *Id.* (citation omitted)  "To convict a defendant of possession of an illegal drug with intent to distribute in violation of 21 U.S.C. § 841(a), the government must establish that the defendant (1) knowingly (2) possessed a controlled substance (3) with intent to distribute it."  *Id.*; *see also United States v. Villasenor*, 894 F.2d 1422, 1429 (5th Cir. 1990) ("[U]nlike many other conspiracy offenses, section 846 does not require proof of an overt act in furtherance of the conspiracy.").

[19] Count Two of the Indictment states as follows:

> Beginning sometime in the year 2004, and continuing until on or about April 27, 2004, in the Western District of Louisiana and elsewhere, the defendants, HOWARD CALVIN HARRIS, Jr., CHRISTOPHER S. TURNER, and KIMBERLEY D. LANG, and other persons known and unknown to the Grand Jury, did knowingly and intentionally conspire and agree together to possess with the intent to distribute marijuana, a Schedule I controlled substance, all

his appellate counsel's performance was deficient nor that he was prejudiced by any such deficiency; his claim of ineffective assistance by appellate counsel in this regard fails.[20]

## III.    Substantial Assistance

Harris argues that the Government wrongfully denied him the benefit of a sentence reduction under U.S.S.G. § 5K1.1.[21]  Section 5K1.1 allows sentencing courts to depart from the guidelines upon motion from the Government stating that the defendant provided substantial assistance in the investigation or prosecution of another person.  In his brief, Harris argues that he did provide substantial assistance and that the Government opted against filing a § 5K1.1 motion out of vindictiveness after Harris rejected a plea offer.

_____

in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Count Four states as follows:

On or about April 27, 2004, in the Western District of Louisiana, the defendants, HOWARD CALVIN HARRIS, Jr., CHRISTOPHER S. TURNER, and KIMBERLEY D. LANG, did knowingly and intentionally possess with the intent to distribute marijuana, a Schedule I controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

[20] Moreover, to the extent that Harris now contends that there was insufficient evidence to support his conspiracy-related conviction, this argument is procedurally barred for failure to raise it on direct appeal.  *See United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992) ("A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error.").

[21] The undersigned notes initially that it appears that this argument is procedurally barred based on Harris's failure to raise it on direct appeal and failure to demonstrate cause and prejudice for such failure.  Harris makes no discernable claim that his appellate counsel was ineffective in failing to raise this claim on appeal.

In *Wade v. United States*, 504 U.S. 181, 183 (1992), the Supreme Court considered the question of "whether district courts may subject the Government's refusal to file [a § 5K1.1] motion to review for constitutional violations." The Court held that district courts may do so, but only when a defendant raises the claim in a way that makes it proper for review. *Id.* "[A] claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motives." *Id.* at 186. Thus, the *Wade* Court held that defendants must make a "substantial threshold showing" to have the right to an evidentiary hearing. *Id.*

Here, Harris has failed to make the requisite substantial showing. His arguments are based entirely on the degree and quality of the assistance he provided to the Government before his trial. *See* [Doc. #150, p.2]. This contention cannot survive the framework set forth in *Wade*. *See United States v. Oliver*, 986 F.2d 1419 (5th Cir. 1993) (unpublished); *United States v. Urbani*, 967 F.2d 106, 109 (5th Cir.1992). The fact that Harris has made a general allegation of vindictiveness does not help his cause. *Wade*, 504, U.S. at 186 (holding that "generalized allegations of improper motive" do not entitle a defendant to a remedy or evidentiary hearing); *United States v. James*, 2008 U.S. App. LEXIS 775 (11th Cir. 2008) ("A mere claim that a defendant has provided substantial assistance or a general allegation of an improper motive, however, will not warrant a remedy or even an evidentiary hearing."). As a result, Harris's claim regarding his right to a sentence reduction for providing substantial assistance is insufficiently substantiated to merit consideration under *Wade*.

## CONCLUSION

For these reasons, it is **RECOMMENDED** that Harris's motion to vacate, set aside, or

correct sentence [Docs. #145, #150] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 28th day of October, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE